IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WER1 WORLD NETWORK, a Hawaii corporation; and INGRID WANG, individually, ) ) ) ) | CV. NO. 11-00195 DAE-RLP |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| CYBERLYNK NETWORK INC., a Wisconsin corporation; MICHAEL SCOTT JEWSON, individually; JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, and DOE ENTITIES 1-10, ) ) ) ) ) ) ) ) | |
| Defendants. ) _____ ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART CYBERLYNK'S
MOTION TO DISMISS COMPLAINT OR TRANSFER VENUE; AND (2)
TRANSFERRING ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

On September 16, 2011, the Court heard Defendant CyberLynk

Network, Inc.'s Motion to Dismiss Complaint or Transfer Venue to the Eastern

District of Wisconsin. Louise Ing, Esq., and Brandon Segal, Esq., appeared at the

hearing on behalf of Plaintiffs WeR1 World Network, Inc. ("WeR1") and Ingrid

Wang (collectively, "Plaintiffs"); John Zalewski, Esq., appeared at the hearing on

behalf of Defendant CyberLynk Network, Inc. ("CyberLynk").  After reviewing

the motion and the supporting and opposing memoranda, the Court **GRANTS IN**

**PART AND DENIES IN PART** CyberLynk's Motion.  The Court hereby

**TRANSFERS** this action to the United States District Court for the Eastern

District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

<u>BACKGROUND</u>

Plaintiff WeR1 is a Hawaii corporation that creates and distributes

children's television entertainment and other multimedia products, such as learning

software and educational games.  (Doc. # 13-1 ¶ 8.)  Zodiac Island is WeR1's first

children's television program.  (Doc. # 13-2 ¶ 6.)  Plaintiff Ingrid Wang, a resident

of Hawaii, is the founder, owner, and CEO of WeR1 and the affiliated Zodiac

Island Group.  (<u>Id.</u> ¶ 2.)  Bernard Yaged, who resides in Hawaii, was the Chief

Financial Officer of WeR1 and Zodiac Island Group from 2003 until 2009.  (Doc.

# 13-1 ¶¶ 2,7.)

Defendant CyberLynk, a Wisconsin corporation with its principal

place of business in Wisconsin, is an internet service provider that offers various

internet-based products, including file transport protocol ("FTP") hosting.  (Doc.

# 7-3 ¶¶ 2–4.)  CyberLynk's FTP hosting provides clients with a central location to

store files and is designed for business clients who wish to share software, photos,

2

drawings, and large files within their business and for other authorized users. (Id. ¶ 4.)

On April 12, 2008, Yaged signed up for an FTP hosting account on CyberLynk's website on behalf of WeR1 because WeR1 needed a secure, centralized location to store its electronic data associated with Zodiac Island's production. (Doc. # 13-1 ¶¶ 13, 15.) After Yaged provided his registration information on the website, he received an email from CyberLynk indicating that CyberLynk had processed his application and created his FTP Server Account. (Id. ¶ 17; Doc. # 13-4.) The email also contained login information and a password for purposes of using and maintaining WeR1's server with CyberLynk. (Doc. # 13-4.) Shortly thereafter, WeR1 began using CyberLynk's FTP hosting services, regularly transmitting files electronically to CyberLynk's servers through the use of CyberLynk's FTP hosting website. (Doc. # 13-1 ¶ 18.)

On or about March 26, 2009, Yaged discovered that almost 300 gigabytes of WeR1's electronic data was missing from the servers maintained by CyberLynk. (Id. ¶ 19.) WeR1 was eventually able to recover 75% of the lost data, but 25% of the FTP data files could not be located and retrieved. (Doc. # 13-2 ¶ 12.)

On March 24, 2011, WeR1 and Ingrid Wang filed suit against CyberLynk, Michael Scott Jewson, and John Does 1-10, Jane Does 1-10, Doe Partnerships 1-10, Doe Corporations 1-10, and Doe Entities 1-10 (collectively, "Defendants").  In the Complaint, Plaintiffs allege that Jewson, a former employee of CyberLynk, used a computer located at his parents' residence in Wisconsin to access CyberLynk's data servers without authorization and deliberately delete electronic data, including approximately 304 gigabytes of WeR1's data. ("Compl.," Doc. # 1 ¶ 25.)  Plaintiffs further allege that CyberLynk failed to effectively perform regular site backup of the data on their servers and to take proper security precautions to prevent foreseeable security breaches.  (Id. ¶¶ 35–36, 38–40.)  The Complaint asserts claims against CyberLynk for breach of contract and negligence, and claims against Jewson for conversion and computer fraud and abuse.  (Id. ¶¶ 34–50.)

On June 8, 2011, CyberLynk moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2); to dismiss for improper venue pursuant to Rule 12(b)(3); or in the alternative, to transfer this case to the Eastern District of Wisconsin pursuant to 28 U.S.C.

§ 1404(a).  (Doc. # 7.)  Plaintiffs filed an Opposition to the Motion on August 15, 2011 (Doc. # 13), and CyberLynk filed a Reply on August 22, 2011 (Doc. # 15).[1]

## STANDARD OF REVIEW

I.    Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction.  A plaintiff has the burden of establishing jurisdiction over a nonresident defendant. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995). When, as here, a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Schwarzenegger, 374 F.3d at 800; Ziegler, 64 F.3d at 473.

In determining whether a plaintiff has made a prima facie showing of jurisdictional facts, the court must accept uncontroverted allegations in the complaint as true.  Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). If

---

[1] The Court notes that Plaintiffs filed Objections to CyberLynk's Declarations and Exhibits on August 17, 2011, two days after the Opposition was due.  In response, CyberLynk filed Objections to Plaintiffs' Objections on August 22, 2011.  The Court sustains CyberLynk's Objections on the grounds that Plaintiffs' Objections were untimely filed and Plaintiffs did not seek permission from the Court to file objections after the deadline pursuant to Local Rule 7.4 or to exceed the page limits set forth in Local Rule 7.5.

5

the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and declarations. See id. Conflicts between the parties' affidavits and other discovery materials must be resolved in favor of the plaintiff. Id.

II.    Motion to Dismiss for Improper Venue

A motion to dismiss based on a forum selection clause is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). In "resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis. . . ." Id. "Analysis under Rule 12(b)(3) . . . permits the district court to consider facts outside of the pleadings[.]" Id. However, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party[.]" Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). In other words, "if the facts asserted by the non-moving party are sufficient to preclude enforcement of the forum selection clause, the non-moving party is entitled to remain in the forum it chose for suit

6

unless and until the district court has resolved any material factual issues that are in genuine dispute." Id. at 1139.

When genuine issues of material fact are raised, the district court may resolve such issues by holding a pre-trial evidentiary hearing on the disputed facts. Id. "Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court." Id. Upon holding a hearing, "the district court may weigh evidence, assess credibility, and make findings of fact that are dispositive on the Rule 12(b)(3) motion." Id. at 1140. "These factual findings, when based upon an evidentiary hearing and findings on disputed material issues, will be entitled to deference." Id.

"Alternatively, the district court may deny the Rule 12(b)(3) motion while granting leave to refile it if further development of the record eliminates any genuine factual issue." Id. at 1139.

III. Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); see 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the

7

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). A motion to transfer venue pursuant to Section 1404(a) requires the district court to consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.3d 834, 843 (9th Cir. 1986).

DISCUSSION

I.     Personal Jurisdiction

In order to exercise personal jurisdiction over a nonresident defendant, the Court must consider whether: (1) the forum state has an applicable long-arm statute that confers jurisdiction over nonresidents; and (2) the assertion of personal jurisdiction comports with the constitutional requirements of due process. Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1064 (D. Haw. 2000); Complaint of Damodar Bulk Carriers, Ltd., 903 F.2d 675, 678 (9th Cir. 1990). Hawaii's long-arm statute provides that a defendant is subject to the jurisdiction of its courts if a plaintiff's cause of action arises from one of the following acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

8

(3) The ownership, use, or possession of any real estate situated in this State;

(4) Contracting to insure any person, property, or risk located within this State at the time of contracting.

Haw. Rev. Stat. § 634–35(a). The statute was designed to extend jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Cowan v. First Ins. Co. of Haw., 608 P.2d 394, 399 (Haw. 1980); see also Jenkins v. Whittaker Corp., 785 F.2d 720, 723 (9th Cir. 1986) ("Hawaii law gives jurisdiction to the full extent allowed by the Constitution.") Therefore, the jurisdictional analyses under state law and federal due process are the same. Damodar Bulk Carriers, 903 F.2d at 679.

For the Court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations and citation omitted); Schwarzenegger, 374 F.3d at 801. The defendant's conduct must have been such that he should reasonably anticipate being haled into court in Hawaii. See Harris Rutsky & Co. Ins. Servs., Inc., 328 F.3d 1122, 1130 (9th Cir. 2003).

9

Two forms of personal jurisdiction exist, general and specific. <u>Dole Food</u>, 303 F.3d at 1111. Plaintiffs allege that this Court has specific jurisdiction over CyberLynk. (Doc. # 13, at 25.)[2]

The Ninth Circuit employees a three-part test to assess specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Schwarzenegger</u>, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs of the test. <u>Id.</u> If the plaintiff satisfies both of the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476–78 (1985)).

---

[2]Plaintiffs do not allege that this Court has general jurisdiction over CyberLynk.

Case 2:11-cv-00901-PJG   Filed 09/20/11   Page 10 of 28   Document 20

The first prong is satisfied "by either purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts.'" Bratyon Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006). A purposeful availment analysis is most often used in suits sounding in contract. Id. On the other hand, a purposeful direction analysis is most often used in suits sounding in tort. Id. (citing Schwarzenegger, 374 F.3d at 802). Since Plaintiffs allege both a tort claim and a contract claim against CyberLynk, either analytical framework may be applied here.

A.    Purposeful Availment

The purposeful availment requirement is satisfied "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). "It is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts 'are purposefully directed' toward forum residents." Id.

In Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997), the Ninth Circuit addressed the application of the purposeful availment principle to

11

defendants involved in transmissions over the Internet.  The Court explained that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet."  Id. at 419 (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  Thus, operation of a passive website is not adequate to establish personal jurisdiction over a defendant, whereas operation of an interactive, commercial website is often sufficient.  Id.  For example, Courts have found that "doing nothing other than registering a domain name and posting an essentially passive website" is insufficient for personal jurisdiction.  See Pebble Beach, 453 F.3d at 1156–57; Cybersell, 130  F.3d at 418–20.  However, where a website is used to conduct business or raise money, courts have found that the exercise of personal jurisdiction is appropriate.  See Panavision Int'l v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (scheme to induce plaintiff to pay defendant for rights to the domain name); Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 1074, 1078 (C.D. Cal. 1999) (website selling patent-infringing goods).

　　　　Interactive sites are those that allow users to "exchange information with the host computer."  Cybersell, 130 F.3d at 418.  When dealing with interactive sites, courts "look[] to the 'level of interactivity and commercial nature

of the exchange of information that occurs on the Web site' to determine if sufficient contacts exist to warrant the exercise of jurisdiction." Id.

Here, CyberLynk operates an interactive website for commercial purposes. The website prompts users to register and pay fees in exchange for FTP hosting services. (Doc. # 13-14.) CyberLynk's customers "exchange information with the host computer" when they submit their personal and credit card information at registration. (Docs. ## 13-15, 13-16.) Cybersell, 130 F.3d at 418 ("Unlike passive sites . . . , users can exchange information with the host computer when the site is interactive."). In response to the receipt of registration information, CyberLynk sends its customers login and password information. (Doc. # 13-1 ¶ 17; Doc. # 13-4.)

Moreover, the interaction does not end at registration. Once customers sign up for FTP hosting services, they can begin transmitting large quantities of electronic data to CyberLynk for storage or other purposes. (Doc. # 7-3 ¶ 4 ; Doc. # 13-1 ¶ 18.) Thus, CyberLynk maintains a continuing relationship with its customers, during which the customer transmits data to CyberLynk and CyberLynk provides hosting services with respect to that data. See Burger King, 471 U.S. at 473 (stating that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state"

13

are subject to personal jurisdiction); see also Zippo, 952 F. Supp. at 1124 ("If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.")

Additionally, it is undisputed that CyberLynk uses its site for commercial business purposes. CyberLynk attempts to solicit new customers by advertising on its website that "CyberLynk's FTP hosting service is perfect for those businesses who want to share software, photos, drawings, and large files with clients and vendors." (Docs. # 13-14.) Indeed, CyberLynk acknowledges that it advertises its services on the internet. (Doc. # 7-3 ¶ 13.) The website invites customers to "SIGNUP FOR FTP HOSTING TODAY." (Id.) New customers can register for services and pay the required fees directly on the website by entering their personal and credit card information. (Docs. ## 13-15, 13-16.) Thus, CyberLynk generates revenue by directly selling its FTP hosting services to Hawaii residents, as well as residents of other states, through its interactive website. (Doc. # 7-3 ¶ 13.)

Accordingly, the Court concludes that the level of interactivity on CyberLynk's website as well as the commercial nature of the exchange of

14

information that occurs on its website is sufficient to satisfy the purposeful availment requirement for specific jurisdiction.

    B.    <u>Forum-Related Activities</u>

        The second prong of the specific jurisdiction test, that "the claim arises out of or relates to the defendant's forum-related activities," requires the defendant's forum-related activities to be the but-for cause of Plaintiffs' alleged injury. <u>Harris Rutsky & Co.</u>, 328 F.3d at 1131–32. Plaintiffs claim that, as a result of the data loss, they suffered serious financial injury, including lost revenue, costs incurred in conducting damages assessment, costs incurred in attempting to restore the data, and consequential damages from the inability to use the data to produce other related products. (Compl. ¶ 49.) This alleged harm arises out of CyberLynk's forum-related activity of providing FTP hosting services to Hawaii residents through its interactive website. In other words, Plaintiffs' claims would not have arisen but for CyberLynk's provision of FTP hosting services to Hawaii residents. Therefore, Plaintiffs have met their burden of establishing minimum contacts adequate for specific personal jurisdiction over CyberLynk.

15

C.     Reasonableness

When a plaintiff meets his burden to establish minimum contacts

arising out of a defendant's activities in the forum state, the burden shifts to the

defendant to prove that the exercise of personal jurisdiction is not reasonable in

light of traditional notions of fair play and substantial justice.  Schwarzenegger,

374 F.3d at 802 (citing Burger King, 471 U.S. at 476–78).  Factors to be

considered include: "(1) the extent of a defendant's purposeful interjection; (2) the

burden on the defendant in defending in the forum; (3) the extent of conflict with

the sovereignty of the defendant's state; (4) the forum state's interest in

adjudicating the dispute; (5) the most efficient judicial resolution of the

controversy; (6) the importance of the forum to the plaintiff's interest in convenient

and effective relief; and (7) the existence of an alternative forum."  Panavision, 141

F.3d at 1323 (citing Burger King, 471 U.S. at 476–77).  The factors are to be

weighed together, and none are dispositive.  Id.  Further, the defendant must

demonstrate that the "inconvenience is so great as to constitute a deprivation of due

process." Id.

The Court finds that CyberLynk has not presented a compelling case

that jurisdiction is unreasonable.  After balancing the seven factors, it is clear that

16

jurisdiction over CyberLynk comports with "fair play and substantial justice." Schwarzenegger, 374 F.3d at 802.

As to the first factor, "[e]ven if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." Panavision, 141 F.3d at 1323. CyberLynk has purposefully injected itself into the affairs of Hawaii by soliciting Hawaii customers and consummating transactions with Hawaii residents through the operation of its interactive, commercial website. However, since CyberLynk has only a small number of Hawaii customers and derives a small percentage of its revenue from those customers, this factor weighs in CyberLynk's favor.

As to the second factor, CyberLynk contends that it would be burdened if it had to litigate this case in Hawaii. (Doc. # 16 ¶¶ 16–17.) However, while a defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, "unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." The burden on CyberLynk as a small business to litigate in Hawaii may be significant, but the inconvenience is not so great as to deprive it of due process.

As to the third factor, CyberLynk concedes that the exercise of jurisdiction in Hawaii would not conflict with the sovereignty of Wisconsin.

As to the fourth factor, "Hawaii has a 'strong interest in providing an effective means of redress for its residents who are tortiously injured.'" <u>Resnick v. Rowe</u>, 283 F. Supp. 2d 1128, 1141 (D. Haw. 2003) (quoting <u>Miracle v. N.Y.P. Holdings, Inc.</u>, 87 F. Supp. 2d 1060, 1070 (D. Haw. 2000)). Since Plaintiffs are Hawaii residents, this factor favors finding jurisdiction.

As to the fifth factor, CyberLynk claims that most of the witnesses and evidence are located in Wisconsin. However, CyberLynk does not provide sufficient evidence to support this contention. Moreover, consideration of the most efficient judicial resolution is "no longer weighted heavily given the modern advances in communication and transportation." <u>Panavision</u>, 141 F.3d at 1323 (citing <u>Caruth v. Int'l Psychoanalytical Ass'n</u>, 59 F.3d 126, 129 (9th Cir. 1995)).

As to the sixth factor, in evaluating the convenience and effectiveness of relief for the plaintiff, the Ninth Circuit has given little weight to the plaintiff's inconvenience. <u>Id.</u> at 1324 (citing <u>Ziegler</u>, 64 F.3d at 476). Thus, although it may be more costly and inconvenient for Plaintiffs to litigate in another forum, this factor weighs only slightly in Plaintiffs' favor.

18

As to the seventh factor, since Wisconsin exists as an alternative forum, this factor weighs in CyberLynk's favor.

On balance, the Court concludes that although some factors weigh in CyberLynk's favor, it failed to present a compelling case that the Court's exercise of jurisdiction in Hawaii would be unreasonable. Therefore, since all of the requirements for the exercise of specific, personal jurisdiction are satisfied, the Court **DENIES** CyberLynk's Motion to Dismiss for lack of personal jurisdiction.

II.    Forum Selection Clause

CyberLynk also moves to dismiss for improper venue on the ground that a forum selection clause in the FTP hosting agreement between WeR1 and CyberLynk requires that this case proceed, if at all, in Milwaukee, Wisconsin. (Doc. # 7-1 at 7.)  Plaintiffs dispute the existence of a forum selection clause. (Doc. # 13, at 8.)

CyberLynk contends that WeR1 consented to the personal and exclusive jurisdiction and venue of the federal and state courts of Milwaukee, Wisconsin.  (Doc. # 7-1, at 9.)  To support its contention, CyberLynk has submitted a document identified as its FTP Hosting Service Subscription Agreement ("FTP Agreement"), which contains the following provision:

19

> This Agreement is to be construed in accordance with and governed by the internal laws of the State of Wisconsin without giving effect to any choice of law rule that would cause the application of the laws of any other jurisdiction other than the internal laws of the State of Wisconsin to the rights and duties of the parties. The Parties hereby consent to the personal and exclusive jurisdiction and venue of the federal and state courts of Milwaukee, Wisconsin.

(Doc. # 7-5, at 4.) CyberLynk has also submitted a copy of a screen-shot of CyberLynk's final registration page, which states that "[b]y clicking the button below you agree you have read and agree to the <u>FTP Hosting Service Subscription Agreement</u>." (Doc. # 7-6.) The underlined text is in the form of a hyperlink that leads to the FTP Agreement containing the provision excerpted above. (Doc. # 7-3 ¶ 11.) Immediately below that language is a button labeled "Complete Registration Form!" (Doc. # 7-6.)

Additionally, CyberLynk has submitted a Declaration from Adam M. Hobach, the President of CyberLynk, stating that the terms, conditions, and text of the FTP agreement before the Court are identical to the terms, conditions, and text of the FTP Agreement in effect on April 12, 2008, the date that WeR1 signed up for CyberLynk's FTP hosting services on behalf of WeR1. (<u>Id.</u> ¶ 5–6.) Hobach explains that the only difference between the agreement before the Court and the one in effect on April 12, 2008 is the date appearing at the top of the document, which is automatically updated daily. (<u>Id.</u> ¶ 6.) Hobach also states that the text

appearing on the screen-shot of CyberLynk's final registration page is identical to the text of CyberLynk's final registration page in effect on April 12, 2008, again with the only exception being the date at the top of the document.  (Id. ¶ 8.) Therefore, the evidence submitted by CyberLynk suggests that WeR1 agreed to the terms and conditions of the FTP Agreement, including its forum selection clause, when it registered for an FTP hosting services account on CyberLynk's website on April 12, 2008.

On the other hand, Plaintiffs assert that WeR1 did not enter into a written FTP Hosting Services Agreement containing a forum selection clause. (Doc. # 13, at 8.)  To support their assertion, Plaintiffs have submitted a Declaration from Bernard Yaged, stating the following:

> On April 12, 2008, I signed up for an FTP Hosting account for WeR1 on Cyberlynk's website.  I did not see any written agreement terms or any URL link to any written terms during the registration process.  I do not recall seeing notice of any written FTP hosting agreement . . . . I do not recall being required to assent to or agree to any written terms; nor do I recall agreeing to any.  I did not see any provisions limiting Cyberlynk's liability or exposure to damages; nor did I see any provisions providing for exclusive jurisdiction in Wisconsin.  Had I seen such provisions, I would have not selected Cyberlynk.

(Doc. # 13-1 ¶ 15.)

Yaged also states in his declaration that he logged onto an internet archive website known as "Internet Archive Wayback Machine" to search for the earliest archived version of CyberLynk's FTP hosting agreement. (Id. ¶ 22.) Attached to his declaration is the screen printout of the webpage that was displayed on the Internet Archive website after he conducted that search. (Docs. # 13-6.) According to that printout, the earliest archived version of CyberLynk's FTP Hosting Agreement is from April 2, 2009. (Id.) Thus, Plaintiffs submit that there may not have been a link to the FTP Hosting Agreement on CyberLynk's website when Yaged registered in 2008. (Doc. # 13, at 9–10.)

The Court need not resolve the issue of whether there exists an applicable forum selection clause in light of the Court's decision to exercise its discretion to transfer this case to the Eastern District of Wisconsin pursuant 28 U.S.C. § 1404(a)."

III.    Convenience Transfer Pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A transfer pursuant to Section 1404(a) lies within the discretion of the district court and

22

depends on individualized, case-by-case considerations of convenience and fairness. <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000).

In determining whether to transfer a case pursuant to Section 1404(a), the Court must weigh several public and private factors, including: "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof." <u>Id.</u> at 498–99.

First, the Court observes that the agreement between WeR1 and CyberLynk was not executed in Hawaii. Yaged registered for FTP hosting services on behalf of WeR1 on CyberLynk's website. (Doc. # 13-1 ¶ 15.) Plaintiffs' counsel represented at the hearing that Yaged was in New Jersey at the time that he registered. Meanwhile, CyberLynk's website was operated from its business location in Franklin, Wisconsin. (Doc. # 7-3 ¶¶ 2–3, 10.) Thus, this factor weighs in favor of transfer to Wisconsin.

23

Second, with respect to Plaintiffs' choice of forum, Plaintiffs filed this lawsuit in Hawaii, which counsels against transfer to Wisconsin.

Third, as to the respective parties' contacts, CyberLynk is a Wisconsin corporation with its principal place of business in Franklin, Wisconsin. (Doc. # 7-3 ¶ 2.) CyberLynk's contacts with Hawaii are limited to its FTP Agreement with WeR1 and seven other internet-based clients. (Id. ¶ 13.) Plaintiffs allege, and CyberLynk does not dispute, that Co-Defendant Michael Scott Jewson is a resident of Wisconsin. (See Compl. ¶ 7.) Meanwhile, WeR1 is headquartered in Hawaii, but also has offices in California, Washington DC, Beijing, and Hong Kong. (Docs. #13-1 ¶ 7.) Its contacts with Wisconsin are limited to the FTP Hosting agreement with CyberLynk and communications with CyberLynk representatives and Wisconsin federal law enforcement officials regarding Jewson's alleged data destruction. (Id. ¶ 37.) Additionally, Ingrid Wang is a resident of Hawaii who, as it was disclosed at the hearing, is currently living in California. (Doc. # 13-2 ¶ 2.) She has no connections to or business in Wisconsin. (Id. ¶ 10.) Since this factor does not clearly weigh in favor of either party, the Court considers it to be neutral.

Fourth, the events giving rise to Plaintiffs' claims indisputably occurred in Wisconsin. With respect to Jewson, Plaintiffs allege that he used a computer located at his parents' residence in Wisconsin to deliberately delete

24

electronic data on CyberLynk's servers, including data belonging to WeR1. (Compl. ¶ 25.)  Jewson has pled guilty to criminal charges arising from that alleged data destruction in the Eastern District of Wisconsin.  United States v. Jewson, Case No. 2:11-CR-00037-JPS (Doc. # 8).  With respect to CyberLynk, Plaintiffs allege that it failed to effectively perform regular site backup of the data on its servers and take proper precautions to prevent security breaches.  (Compl. ¶¶ 35–40.)  Since CyberLynk's business operations and data center are in Wisconsin, the alleged failures relating to its FTP hosting services would have also occurred in Wisconsin.  In other words, Plaintiffs' claims are based on acts and omissions that allegedly occurred in Wisconsin.  Therefore, the contacts relating to Plaintiffs' causes of action weigh heavily in favor of transfer.

Fifth, as to the differences in the cost of litigating in the two forums, Wang claims that being required to litigate in Wisconsin would "compound the financial hardship" she has already incurred as a result of CyberLynk's alleged misconduct.  (Doc. # 13-2 ¶ 13.)  Meanwhile, Hobach contends that litigating this case in Hawaii would work a great hardship on CyberLynk, particularly if he, as President of the company, were required to leave work in Wisconsin to travel to

25

Hawaii. (Doc. # 7-3 ¶ 17.) Regardless of the forum in which this lawsuit proceeds, some of the parties will inevitably incur travel-related expenses. On balance, it appears that litigating this action in Wisconsin may require less expense, particularly since both defendants are in Wisconsin, Yaged resides in New Jersey, and Wang is currently living in California. Therefore, this factor weighs in favor of transfer.

Sixth, with respect to the availability of compulsory process to compel attendance of unwilling nonparty witnesses, this factor is neutral because neither side has identified any unwilling nonparty witnesses.

Seventh, with respect to ease of access to sources of proof, potential witnesses for this case are located in Hawaii, Wisconsin, New Jersey, and California. (Doc.# 7-3 ¶ 16; Doc. # 13-1 ¶¶ 38–39.) While the parties have not addressed the current location of CyberLynk's business records, the Court presumes that such records would be located in the same place as the company's business operations. Additionally, since CyberLynk's main data center is located in Wisconsin, its servers and other equipment related to this FTP hosting services would also be in Wisconsin. (Doc. # 7-3 ¶ 3.) Moreover, since Jewson was criminally charged for the alleged data destruction in the Eastern District of

Wisconsin, evidence pertinent to those events may be in Wisconsin. The Court therefore concludes that this factor weighs in favor of transfer.

On balance, based on all the Section 1404(a) factors discussed above, the Court concludes that transferring this case to Wisconsin would best serve the convenience of the parties and witnesses and the interests of justice.[3] Accordingly, the Court **GRANTS** CyberLynk's Motion to Transfer Venue and **TRANSFERS** this action to the United States District Court for the Eastern District of Wisconsin.

CONCLUSION

For these reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** CyberLynk's Motion to Dismiss Complaint or Transfer Venue. (Doc. # 7.) The Court hereby **TRANSFERS** this action to the United

---

[3]In reaching this conclusion, the Court does not express any view with respect to the state most familiar with the governing law. The Court notes that the governing law may depend on whether there exists an FTP Agreement mandating the application of Wisconsin law. In any event, although the parties dispute whether Wisconsin law applies, the Court need not reach this issue because the other 1404(a) factors weigh heavily in favor of transfer.

States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C.

§ 1404(a).

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, September 20, 2011.



_____
David Alan Ezra
United States District Judge

WeR1 World Network, et al., v. CyberLynk Network, Inc., et al., CV 11-00225 DAE-BMK; ORDER: (1) GRANTING IN PART AND DENYING IN PART CYBERLYNK'S MOTION TO DISMISS COMPLAINT OR TRANSFER VENUE; AND (2) TRANSFERRING ACTION TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN